UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WESTWACKER K-PARCEL LLC and )
WESTWACKER HOLDINGS LLC, )
 )
        Plaintiffs, )
 )
vs. ) 05 C 4988
 )
PACIFIC MUTUAL LIFE )
INSURANCE CO., )
 )
        Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before this Court on the parties' cross-motions for summary judgment. For the following reasons, summary judgment is granted in part and denied in part.

## BACKGROUND

In assembling the recitation of material facts that follows, we have disregarded any alleged facts or purported denials that are unsupported by the record or do not comply with Local Rule 56.1. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).[1]

---

[1] Plaintiffs filed a motion to strike Defendants' denials to 23 paragraphs of its Statement of Material Facts as "wholly unsupported by evidentiary material which may be considered" under Fed. R. Civ. P. 56 and L.R. 56.1. Plaintiffs do not explain why
(continued...)

This litigation arises out of a real estate loan (the "Loan") made by Defendant Pacific Mutual Life Insurance Co. ("Pacific") to the Chicago Dock and Canal Trust ("Chicago Dock"). Under the terms of the Loan, on May 29, 1987, Pacific loaned Chicago Dock $6.3 million at 9.5% interest, secured by property located at 505 North Peshtigo Court, Chicago, Illinois ("the Kraft parcel"). The Loan is evidenced by a Note and Mortgage, as well as a Specific Assignment that collaterally assigned the existing lease on the Kraft parcel to Pacific. The Loan contemplated a maturity date of April 1, 2016. However, after the expiration of the tenth loan year, prepayment was permitted upon payment of a premium "equal to the greater of: (I) the Loss of Yield [defined separately] to the Lender for the period from the date of prepayment through

---

[1](...continued)
the evidence proffered in support of Defendants' denials, which consists of references to testimony and documents in the record, is insufficient. An examination of the contested responses shows that Plaintiffs simply disagree with Defendants' characterization and interpretation of events, rather than with the admissibility of the evidence proffered in Defendants' denials. Further, Plaintiffs complain that Defendants have submitted "seven unsworn and uncertified documents" that should be stricken for failure to comply with the rules. Three of these exhibits are the same ones that Plaintiffs have submitted in support of their own case in chief. Another is Defendants' expert report, upon which Plaintiffs cross-examined the expert. The remaining three exhibits consist of documents which were identified and testified to by deponents, who were authors or recipients of the documents. There is simply no basis for striking these documents. Plaintiffs do not explain why each document submitted in support of summary judgment must be sworn and certified, nor do they claim that the documents themselves are false or otherwise untrustworthy. As Plaintiffs' motion to strike is meritless, it is denied.

the maturity date; and (ii) one percent of the outstanding principal amount...as of the date of prepayment."

The Mortgage and the Note both provide that the Loan may not be assigned by the Mortgagor for the first ten years. After ten years, Pacific agreed not to "unreasonably withhold its consent to a single sale or transfer" upon payment of a fee of 1% of the outstanding principal balance (the "Transfer Right"). Once there has been such a sale or transfer, Paragraph 17 of the Mortgage and a corresponding portion of the Note provide that Mortgagor or its successor "shall have no further right to sell or transfer any interest described above without [Pacific's] consent which may then be withheld for any reason in [Pacific's] sole and absolute discretion."

In the late 1990s, Chicago Dock was acquired by real estate developer Daniel E. McLean, who purchased its shares on the open market. McLean then reorganized his real estate holdings in the area of the Kraft Parcel, and formed Plaintiffs WestWacker K-Parcel LLC and WestWacker Holdings LLC (collectively, "WestWacker"). WestWacker is owned and controlled by a Japanese corporation, Mitsui Sumitomi Insurance Company ("Mitsui").

In 2003, McLean entered into a deed in lieu of foreclosure arrangement ("the Deed in Lieu Agreement") with Mitsui. As McLean had pledged his shares in Chicago Dock as part of a guaranty on an adjacent parcel, Chicago Dock was required, as part

of the Deed in Lieu Agreement, to convey the Kraft parcel to Plaintiff WestWacker K-Parcel.

Under the terms of the Mortgage and Note, conveyance of the Kraft parcel required Pacific's consent. On March 25, 2003, Pacific entered into a written Consent Agreement with Plaintiff WestWacker Holdings, LLC. The Consent Agreement provides, in relevant part, that:

> [Pacific] hereby agrees to consent....to the transfer of the Kraft Site....Pacific hereby agrees to waive the assumption fee of one percent (1%) of the outstanding principal balance of its loan to Chicago Dock in connection with the Consent given herein; provided, however, such waiver is on a one-time only basis and the provisions of Paragraph 17 of the Mortgage and the corresponding provisions of the Note shall remain in full force and effect following this Consent.

Having obtained Pacific's consent, Chicago Dock transferred the Kraft parcel as provided in the Deed in Lieu Agreement.

Less than a year later, on January 20, 2004, McLean sent Pacific a letter requesting that it agree to permit another McLean company, MCL CDC Land, LLC ("MCL CDC") to assume the Loan. On the same day, Patrick Ellum, attorney for Mitsui and WestWacker, sent Pacific a letter requesting that Pacific permit the loan to be assigned as McLean requested or prepaid without any prepayment premium. On January 28, 2004, Pacific rejected both requests, explaining that, after the one-time transfer in 2003, they were entitled to reject or approve any further requests in their sole discretion, as permitted by the Mortgage and Note.

WestWacker paid off the Mortgage on February 26, 2004, although they reserved their rights to contest three charges included in the payoff amount: a $2,351,767.18 prepayment premium, interest in the amount of $36,583.10, and $19,995.50 in attorneys' fees.

On August 25, 2005, WestWacker filed suit against Pacific and amended their complaint on October 31, 2005, to state two claims against Pacific: 1) a claim for breach of contract due to Pacific's refusal to consent to the transfer to MDL CDC and its calculation of the disputed charges, and 2) a request for a declaratory judgment that the prepayment premium was unreasonable. We denied Pacific's motion to dismiss, holding that the contract neither clearly supported or barred WestWacker's claims and that we lacked sufficient information to determine whether or not the prepayment premium was an unreasonable and illegal penalty. After discovery, the parties filed the instant cross-motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party

to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In considering cross summary judgment motions, we "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (internal citations omitted). With these legal principles in mind, we consider the instant motions.

## DISCUSSION

This lawsuit is premised upon WestWacker's objections to the legality of the prepayment premium as well as to Pacific's conduct in the performance of the contract. We address first whether or not Pacific breached the contract, as WestWacker alleges, by refusing to permit a transfer of the property and by demanding the payment of the prepayment amount, interest, and fees. Second, we consider WestWacker's objections to the legality of the prepayment premium.

**I. Pacific's Alleged Breach of Contract by Refusal to Honor the Transfer Right**.

WestWacker contends that Pacific breached the terms of the Loan when it refused to consent to a second transfer of the Loan to MCL CDC in January 2004. First, WestWacker argues that the Consent Agreement governing the first transfer preserved the Transfer Right contained in the Loan. Since the Consent Agreement preserved the Transfer Right, WestWacker argues, Pacific breached the terms of the

Loan when it "unreasonably withheld" its consent to the transfer. On the other hand, Pacific argues that the parties both understood that the first transfer had exhausted the Transfer Right. Furthermore, Pacific argues that even if the Transfer Right was preserved, it did not repudiate that right or otherwise unreasonably withhold its consent to a transfer because it was concerned about the negative financial history of McLean, the real estate developer who was to be involved with the transferee company, MDL CDC.

When interpreting a contract, under Illinois law, "the cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language." *Virginia Sur. Co., Inc. v. Northern Ins. Company of New York*, 866 N.E.2d 149, 153 (Ill. 2007). This "four corners" rule requires that a court construe the contract without regard to extrinsic evidence so long as the language is unambiguous. If the court finds ambiguity, extrinsic evidence may be admitted to aid in construction. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). Ambiguity may be found where the language of the contract is "reasonably susceptible to more than one meaning" or "obscure in meaning through indefiniteness of expression" but not simply because the parties disagree as to the meaning of certain provisions. *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004).

We begin by examining the terms of the Loan and Consent Agreement. The Loan prohibits the Maker/Mortgagor from transferring the Note and Mortgage without

prior written consent of Pacific. However, both the Note and Paragraph 17 of the Mortgage do provide for a one-time transfer, in relevant part:

> [Pacific] shall not unreasonably withhold its consent to a single sale or transfer (as opposed to multiple sales or transfers) of the above interest occurring after the expiration of the tenth Loan Year...if, as of the time of such sale or transfer, (x) the prospective purchaser satisfied [Pacific's] requirements for financial capacity, (y) the Kraft Lease remains in effect without default...or, if such lease is not longer in effect, the annual net rental...is not less than 125% of the debt service due under the Note..., and (z) a fee of one percent of the then-outstanding principal amount is paid to Pacific. In the event Pacific consents to any such sale or transfer as provided above and such sale or transfer is consummated, thereafter, Mortgagor or its successor shall have no right to sell or transfer any interest...without Pacific's consent which may then be withheld for any reason, in Pacific's sole and absolute discretion.

When Pacific consented to the first transfer of the Loan from Chicago Dock to WestWacker, the parties signed a Consent Agreement, which provides, in relevant part, that:

> [Pacific] hereby agrees to consent...to the transfer of the Kraft Site... Pacific hereby agrees to waive the assumption fee of one percent (1%) of the outstanding principal balance of its loan to Chicago Dock in connection with the Consent given herein; provided, however, such waiver is on a one-time only basis and the provisions of Paragraph 17 of the Mortgage and the corresponding provisions of the Note shall remain in full force and effect following this Consent.

WestWacker argues that the Consent Agreement is not ambiguous and that the parties intended to retain the Transfer Right so that the property could be sold and the Loan reassigned. For its part, Pacific contends that the language is ambiguous and that, in

order to give it meaning, we must examine parol evidence to determine the intent of the parties. Pacific asks us to conclude, from the actions of WestWacker's officers, that the parties had a shared understanding at the time the Consent Agreement was signed that it represented the sole transfer under the terms of the Loan.

Our first task is to determine whether or not the language of Consent Agreement unambiguously preserved WestWacker's Transfer Right. As an initial matter, we address WestWacker's repeated insistence that we have already decided that the Consent Agreement preserved the Transfer Right. The plain language of our prior opinion on Pacific's motion to dismiss makes clear that we have not done so. In that opinion, we refused to credit either Pacific or WestWacker's interpretations of the Consent Agreement, holding that:

> ...because Paragraph 8 of the Consent Agreement indicates that Paragraph 17 of the Mortgage was to "remain in full force and effect," we find that said language could reasonably be taken to mean that the 1% transfer right had not been exhausted. If that in fact is the correct interpretation, then it is possible, as Plaintiffs, allege, that Pacific breached the Loan Agreement when it denied the transfer to the Developer."

*WestWacker K-Parcel LLC v. Pacific Mut. Life Ins. Co.*, 2006 WL 163171 at *3 (N.D. Ill. Jan. 20, 2006). Consequently, we denied Pacific's motion to dismiss. As the plain language of our opinion indicates, we stated that it was *possible* that WestWacker's interpretation of the Consent Agreement was correct - not that it was in fact correct. Thus, we have never proffered a definite legal interpretation of the Consent Agreement.

According to WestWacker, the Consent Agreement's specification that the provisions of Paragraph 17 of the Mortgage remain "in full force and effect" must mean that the Transfer Right was not exhausted; otherwise, WestWacker contends, the word "full" would lack meaning. The word "full" is basically redundant in this common expression, which Webster's Third Unabridged Dictionary lists under "force and effect" and defines as "legal efficacy." Stating that the provisions of Paragraph 17 remain "in full force and effect" could mean either that: 1) the Transfer Right has been exhausted and Pacific retained all of the rights and remedies as set out in that paragraph; or 2) that Paragraph 17 remained "in full force" as though the Transfer Right had never been used. We are not persuaded by WestWacker's final argument: that references in the Consent Agreement to a "Future Transferee" and "any assignee" are evidence that the parties contemplated another transfer and that the Transfer Right had not been exhausted. As the terms of the Loan would have allowed future transfers even if the Transfer Right had been exhausted, albeit at Pacific's sole discretion, the fact that the parties contemplated that there may be future transferees or assignees is probative of nothing. Accordingly, nothing in the contract that will aid us in choosing between the two potential meanings of the phrase "full force and effect" and we find that the contract language is ambiguous.

As we have determined that the language "full force and effect" is ambiguous, we will consider the extrinsic evidence proffered by the parties. Pacific argues that the

Transfer Right was exhausted because the parties intended that the Loan would never again be transferred; instead, the Loan would be paid off. The undisputed material facts indicate that it is Pacific's version of the agreement that is supported by the evidence. Documentary evidence shows that Patrick Ellum, counsel representing WestWacker, wrote to Pacific prior to the signing of the Consent Agreement that "it is [WestWacker's] intention to seek an early sale of the property, with your loan being repaid." Allan Guest, the Chief Executive Officer of WestWacker's parent corporation, Mitsui, informed Pacific in a letter that they intended to "dispose of all the properties at an early opportunity, redeeming your mortgage and the mortgages on the other properties." There would be no need to retain a Transfer Right in this situation. Furthermore, when both WestWacker, represented by the same counsel who represented WestWacker during the first transfer, and MCL CDC wrote to Pacific requesting permission for MCL CDC to assume the loan or permit repayment without the prepayment premium, neither party indicated that Pacific was obligated to consider their requests under the strict conditions of the 1% Transfer Right. WestWacker's proffered evidence in support of its version of the agreement establishes nothing more than that whatever understanding the parties reached, it was not included in the Consent Agreement. Thus, the testimony of the WestWacker lawyers involved in the negotiations does not refute Pacific's version of the events.

The evidence of the parties' actions convinces us that the language "full force and effect" preserved the remaining rights and obligations contained in Paragraph 17 of the Mortgage rather than reinstituting the Transfer Right. Therefore, Pacific did not breach the Loan when it refused to permit a second transfer.

II. **Pacific's Alleged Breach of Contract By Charging Excessive Fees and Interest**

WestWacker next argues that Pacific breached the contract by demanding payment of a prepayment premium, attorneys' fees in excess of what is permitted by the Loan documents, and interest calculated through the end of the month in which prepayment was made, rather than calculated until the date of tender.

A. **Waiver of the Prepayment Premium**

WestWacker first contends that when Pacific rejected its requests for prepayment of the Loan without payment of the prepayment premium and for assumption of the loan by MDL CDC, such a rejection amounted to an acceleration of the Loan. Thus, WestWacker argues, because Pacific accelerated the Loan, it could not collect a prepayment premium under Illinois law. *See, e.g., Slevin Container Corp. v. Provident Fed. Sav. and Loan Ass'n of Peoria*, 424 N.E.2d 939, 941 (Ill. App. Ct. 1981) (voluntary acceleration by lender makes payment after that date payment after maturity; therefore, no prepayment premium applies). However, while WestWacker states the general rule correctly, it ignores the definition of "acceleration" established in the

Illinois cases. Acceleration must be an "overt act" showing "unmistakable intention" to immediately call in the loan pursuant to the loan documents. *First Nat'l Bank of Springfield v. Equitable Life Assur. Soc. of U.S.*, 510 N.E.2d 518, 523 (Ill. App. Ct. 1987) (calculation of payoff amount did not amount to acceleration where borrower retained option to continue paying mortgage until date of maturity); *see also Matter of LHD Realty Corp.*, 726 F.2d 327, 331 (7th Cir. 1984) (to accelerate, mortgagee must show "an unmistakable intention to exercise the option") (internal citations omitted).

WestWacker maintains that Pacific's strategy since before March 2003 was to "engineer" an immediate payoff of the loan, a strategy that culminated in its January 2004 rejection of WestWacker's proposals and "forced" WestWacker to immediately pay off the Loan. Notwithstanding WestWacker's interpretation of the events, the plain language of the January 2004 letter rejecting WestWacker's requests does not indicate that Pacific accelerated the loan. Instead, Pacific wrote that it "would not consider any further requests for its consent to the transfer of the Property and assumption of the Loan but instead require payment of the loan in full in accordance with the provisions of the Loan documents." The Loan documents provide for payment on the date of maturity or early payoff with payment of a prepayment premium. Accordingly, Pacific did not "force" a payoff. Mere creation of economic pressure does not suffice to establish acceleration of a loan. *First Nat'l Bank of Springfield*, 510 N.E.2d at 523. Instead, Pacific exercised what it believed to be its right under the Loan documents to

reject further transfers of the Kraft parcel and left it up to WestWacker to determine whether or not WestWacker would continue to pay the loan until maturity or pay it off early. There was no acceleration of the Loan. Accordingly, Pacific did not waive its prepayment premium and thereby breach the contract by demanding payment of the premium.

### B. Payment of Interest

Pacific justifies its calculation of interest until the end of the month that the payoff was made by pointing to a provision in the Loan providing that interest on the Loan is to be calculated on the basis of a 30-day month and a 360-day year. Provisions of the Loan address the payment of interest "on demand" in the event of acceleration or default, but there is no provision for the calculation of interest in the event of prepayment. In the absence of any specific contractual language dealing with the calculation of interest, we turn to the common law of the state of Illinois, specified by the parties as the law governing the Loan. Under Illinois law, unconditional tender stops the accrual of interest. 815 ILCS 205/4; *Pinkstaff v. Pennsylvania R. Co.*, 202 N.E. 2d 512, 516 (Ill. 1964); *Steward v. Yoder*, 408 N.E.2d 55, 57 (Ill. App. Ct. 1980); *see also* 28 Williston on Contracts § 72:45 (4th ed.). However, tender must be an "offer to pay combined with the present ability of immediate performance," meaning that the money must actually be set aside for that purpose. *Meeker v. Gray*, 492 N.E.2d 508, 515 (Ill. App. Ct. 1986) ("To avoid paying interest after tender, the debtor must

keep the money ready at all times...[and] must, in general, give notice that the money is lying dead, and must actually appropriate it for the payment of the particular debt.").

WestWacker has provided us with no evidence that its offer to prepay the Loan on February 23 was accompanied by any assurance that money was actually appropriated for that purpose. Instead, WestWacker has proven only that the Loan was in fact prepaid on February 26. Therefore, it is the date of February 26, rather than the date of February 23, which we will use to determine when interest ceased to accrue.

Illinois law provides that, "in computations of interest or discount for any number of days less than a month, a day shall be considered a thirtieth part of a month, and interest or discount shall be computed for such fractional parts of a month upon the ratio which such number of days shall bear to thirty." 815 ILCS 205/10 (West 1992); *Halloran v. Dickerson*, 679 N.E.2d 774, 779 (Ill. App. Ct. 1997). This is consistent with the general terms of the accrual of interest as provided in the contract. Accordingly, the daily interest due was $1,219.44 ($36,583.10 in monthly interest divided by a 30 day month). Thus, Pacific did charge too much interest when it charged from the date of payoff up to and including March 1. WestWacker is entitled to the four days' worth of excess interest, representing the interest charged from February 26 to March 1 - a total of $4,877.76.

### C. Attorneys' Fees

Pacific justifies its collection of attorneys' fees by pointing to Paragraph 40 of the Mortgage, and corresponding provisions of the Note, which provide in relevant part that:

> [I]n the event Mortgagor requests Mortgagee's consent to any act requiring Mortgagee's consent under the Note, this Mortgage or the Loan Documents, Mortgagor shall pay to Mortgagee a reasonable fee for the processing of such request, whether or not such consent is given and such fee shall be in addition to any other fee or charge provided for in the Note, this Mortgage or the Loan Documents.

Pacific argues that the legal fees it charged WestWacker represented "reasonable fees" incurred in connection with acts that required Pacific's consent: Chicago Dock's request for assignment of the Note and Mortgage in 2003, WestWacker's request for a second assignment in 2004 by MCL CDC, and WestWacker's request for prepayment of the Note and Mortgage in 2004.

As an initial matter, any fees incurred in the loan payoff or the request for prepayment are not recoverable under any construction of the term "reasonable fee for processing" contained in Paragraph 40, because the Note and Mortgage make clear that prepayment is not an event requiring Pacific's consent.

With regard to the other events at issue, we find that the meaning of the term "reasonable fee for processing" must be determined by examining this phrase in the

context of the entire contract. As WestWacker notes, attorneys' fees are excluded from costs incurred in connection with acts requiring Pacific's consent, while earlier in that same paragraph, attorneys' fees are explicitly included with costs incurred in connection with making the loan. We find that the failure to provide for the payment of legal fees in connection with acts requiring Pacific's consent, while the types of fees for which WestWacker is responsible during loan origination are exhaustively catalogued, is telling. If Pacific intended that "reasonable fee for processing" should include attorneys' fees, it could have made that clear in the terms of the contract. It did not. Thus, we find that a "reasonable fee for processing" does not include legal fees.

The only evidence as to what fee was charged for processing consent requests comes from the uncontested testimony of Pacific's employee, who testified that "reasonable fee for processing" refers only to a $100 "standard" charge for processing consent requests. Pacific contends that the issue of the reasonableness of the fees incurred is disputed and not appropriate for summary judgment. However, Pacific provides no information besides its own assertion that the fees it charged were "reasonable" under the circumstances.

Pacific's disagreement with WestWacker's construction of the terms of the Loan, absent any support, is not sufficient to survI've summary judgment on this issue. Accordingly, WestWacker was not obligated to pay $19,995.50 in legal fees to Pacific.

As Pacific has provided no evidence to contradict the testimony of its own employee that the "reasonable fee for processing" is $100, we find that Pacific overcharged WestWacker by $19,895.50. Consequently, we grant summary judgment to WestWacker on this issue.

### III.    Enforceability of the Prepayment Premium

In Count II of its amended complaint, WestWacker asked us to find that, under Illinois law, the prepayment premium it was required to pay is an unenforceable penalty because it contains a "built in" overcompensation to Pacific, is not a reasonable attempt to estimate actual damages, and thus is impermissibly designed to financially discourage prepayment whenever interest rates may dip. In its summary judgment briefing, WestWacker relied upon *River East Plaza, LLC v. The Variable Annuity Life Ins. Co.*, 2006 WL 2787483 (N.D. Ill. Sept. 22, 2006), in which a prepayment premium containing a yield maintenance clause very similar to that at issue in this case was held to be unenforceable penalty. The Seventh Circuit has since reversed the judgment in *River East* and held that there is nothing inherently punitive in the use of a yield maintenance formula of the type employed in the instant Loan for the calculation of a prepayment premium that transforms the prepayment premium into an unenforceable penalty. *River East Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*, – F.3d – , No. 06-3856 at *12-13 (7th Cir. Aug. 22, 2007). WestWacker acknowledged that the Seventh

Circuit's decision negates the arguments they raised in their motion for summary judgment and requested leave to withdraw those arguments. Accordingly, we dismissed Count II without prejudice in our order of August 30, 2007.

## CONCLUSION

For the foregoing reasons, summary judgment is granted in part and denied in part as to both parties as follows. Summary judgment is granted to Pacific on Count I of WestWacker's Amended Complaint in that Pacific did not breach the terms of the Loan by refusing to permit a second transfer or by demanding payment of the prepayment premium. Summary judgment is granted to WestWacker on Count I of its Amended Complaint with respect to the overpayment of interest and legal fees. Finally, as WestWacker has voluntarily withdrawn Count II, we dismiss that count without prejudice.

*Charles P. Kocoras*
———————————————
Charles P. Kocoras
United States District Judge

Dated:   September 11, 2007