UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WESTWACKER K-PARCEL LLC and )
WESTWACKER HOLDINGS LLC, )
)
          Plaintiffs, )
)
  vs. )    05 C 4988
)
PACIFIC MUTUAL LIFE INSURANCE, CO., )
)
          Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Defendant Pacific Mutual Insurance Co. ("Pacific")'s motion for reasonable attorneys' fees and costs. For the following reasons, Pacific's motion is granted.

## BACKGROUND

Pacific loaned Chicago Dock and Canal Trust $6.3 million (the "Loan") in 1987 to purchase a piece of property. Plaintiffs WestWacker K-Parcel, LLC and WestWacker Holdings, LLC (collectively "WestWacker") later assumed the Loan. Contained in the Loan were two provisions of significance in this case. The first provision required WestWacker to obtain Pacific's consent in order to transfer the Loan

to a third party. The second provision required WestWacker to pay a prepayment premium if it chose to pay the Loan early.

In January 2004, WestWacker requested that Pacific allow it to transfer the Loan to a third party or, in the alternative, allow WestWacker to prepay the Loan without paying the prepayment premium; Pacific denied WestWacker's requests. About one month later, WestWacker prepaid the Loan along with the Release Amount, which consisted of the sum of the following three payments demanded by Pacific: 1) the prepayment premium ($2,551,767.18), 2) certain attorneys' fees ($19,895.50), and 3) certain interest ($36,583.10), consistent with the following agreement ("February Agreement"):

> ...The undersigned are the direct and indirect 100% owners of [the property]. WestWacker...intends to sell the [property] and in connection therewith repay the Loan. As you know, [WestWacker] has requested that the Loan be assigned to the purchaser, or in the alternative that [Pacific] accept repayment of the Loan without any prepayment premium. [Pacific] has declined these requests.
>
> Pacific has provided [WestWacker] with a payoff letter stating the amount [Pacific] requires to release the Loan ("Release Amount") and upon closing the sale, [Pacific] has agreed to accept the Release Amount, without prejudice to [WestWacker]'s right to contest such amounts following release of the Mortgage and the closing of such sale...
>
> In order to induce [Pacific] to agree to such arrangements, [WestWacker] hereby agree[s] that in the event that [it]...brings an action in a court of competent jurisdiction to contest the Release

> Amount, but does not obtain a final judgment in such action in [its] favor...[it] will promptly reimburse [Pacific] for all court costs and reasonable attorneys' fees incurred by [Pacific] in defending such action...

WestWacker subsequently filed suit against Pacific in August 2005 and amended its complaint in October 2005 to state two claims against Pacific: Count 1) a claim for breach of contract due to Pacific's refusal to consent to the transfer and its calculation of the disputed charges and Count 2) a request for a declaratory judgment that the prepayment premium was unreasonable.

After the parties filed cross-motions for summary judgment in September 2006, we made the following summary judgment rulings: 1) we granted partial summary judgment in Pacific's favor on Count I because we found that Pacific had not breached the terms of the Loan by refusing to permit a second transfer or by demanding payment of the prepayment premium; 2) we granted partial summary judgment in WestWacker's favor on Count I because we found that WestWacker had overpaid Pacific approximately $25,000 in interest and legal fees; and 3) we dismissed Count II because WestWacker had voluntarily dismissed it prior to our ruling.

Pacific now seeks reasonable attorneys' fees and costs pursuant to the February Agreement.

# LEGAL STANDARD

Under the so-called "American Rule," a party to a lawsuit pays its own attorneys' fees absent some sort of authority to shift the burden, such as a statute, a rule of procedure, or prior agreement of the parties. *See, e.g.,* 42 U.S.C.§ 1998; *West Lafayette Corp. v. Taft Contracting Co., Inc.*, 178 F.3d 840 (7th Cir. 1999).; Fed. R. Civ. P. 37(a)(5)(A) and (B). The February Agreement between the parties provides the necessary authority to shift the burden of paying Pacific's attorneys' fees to WestWacker.

When interpreting a contract under Illinois law, "the cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language." *Virginia Sur. Co., Inc. v. Northern Ins. Co. of New York*, 886 N.E.2d 149, 153 (Ill. App. Ct. 2007). This "four corners" rule requires that a court construe the contract without regard to extrinsic evidence so long as the language is unambiguous. If the court finds ambiguity, extrinsic evidence may be admitted to aid in construction. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. App. Ct. 1999). Ambiguity may be found where the language of the contract is "reasonably susceptible to more than one meaning" or "obscure in meaning through indefiniteness of expression" but not simply because the parties disagree to the meaning of certain

provisions. *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E2d 206, 213 (Ill. App. Ct. 2004).

## DISCUSSION

We agree with the parties that the February Agreement is unambiguous and that it is unnecessary for us to look to extrinsic evidence in order to determine what the parties' intentions were when they entered into the agreement. However, we disagree with WestWacker's interpretation of the February Agreement.

According to WestWacker, the parties intended for WestWacker to pay Pacific's reasonable attorneys' fees and costs only if WestWacker did not obtain a final judgment with regard to the Release Amount. In support of its position, WestWacker cites the following portion of the February Agreement:

> In order to induce [Pacific] to agree to such arrangements,... the undersigned hereby agree that in the event that [WestWacker]...brings an action in a court of competent jurisdiction to contest the Release Amount, but does not obtain a final judgment in such action in [its] favor..., [WestWacker] will promptly reimburse [Pacific] for all court costs and reasonable attorneys' fees incurred by [Pacific] in defending such action.

Though this sentence seems to support WestWacker's view, we must look to the contract as a whole to determine the parties true intent:

> ...because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others...The intent of the parties is not to be gathered from

> detached portions of a contract or from any clause or provision standing by itself.

*Gallagher v. Lenart*, 874 N.E.2d 43 (Ill. 2007).

In reviewing the entire February Agreement it is clear that the main issue in dispute between the parties was the prepayment premium; not the Release Amount. The February Agreement demonstrates that WestWacker entered into the agreement so that it could prepay the Loan early without losing its right to contest the prepayment premium, and Pacific entered into it so that it could receive its reasonable attorneys' fees and costs from WestWacker if WestWacker was unsuccessful in its future attempt to contest the prepayment premium. As such, we disagree with WestWacker's position because it improperly shifts the focus to the Release Amount when it should remain on the prepayment premium.

Moreover, we find this case to be similar to those instances where we must deny a prevailing party reasonable attorneys' fees and costs because its "victory" is "merely technical or *de minimis*." *Fisher v. Kelly*, 105 F.3d 350, 352 (7th Cir. 1997). This is because in this case, WestWacker sought to recover over $2.5 million but only obtained a partial final judgment of about $25,000. As we mentioned above, the final judgment WestWacker obtained did not concern the most significant issue in dispute between the parties (the prepayment premium), but rather the ancillary issue of attorneys' fees and interest. *See Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.

1993). Therefore, because WestWacker did not obtain a final judgment in its favor with regard to the prepayment premium, it must now reimburse Pacific for the reasonable attorneys' fees and court costs it incurred in defending the validity of the prepayment premium.

## **CONCLUSION**

For the foregoing reasons, Pacific's motion is granted.

/s/ Charles P. Kocoras
_____
Charles P. Kocoras
United States District Judge

Dated:  April 21, 2008